UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| MA VICTORIA PEREZ,<br><br>        Plaintiff,<br>   v.<br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>        Defendant. | No. ED CV 16-00583-AS<br><br>**MEMORANDUM OPINION AND ORDER OF REMAND** |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**I. PROCEEDINGS**

On March 30, 2016, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for Acting Commissioner Carolyn W. Colvin in this case. See 42 U.S.C. § 205(g).

of disability and disability insurance benefits. (Docket Entry No 1). On August 29, 2016, Defendant filed an Answer to the Complaint, and the Certified Administrative Record ("AR"). (Docket Entry Nos. 15-16). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11-12). The parties filed a Joint Stipulation ("Joint Stip.") on December 23, 2016, setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 19).

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On June 20, 2011, Plaintiff, formerly employed as a products assembler and machine packager (see AR 411), filed an application for disability insurance benefits, alleging disability beginning on November 21, 2009. (AR 360-61). On September 21, 2012, Administrative Law Judge ("ALJ"), James P. Nguyen, examined the record and heard testimony from Plaintiff and vocational expert ("VE"), Troy Scott. (AR 61-81). On October 26, 2012, the ALJ denied Plaintiff benefits in a written decision. (AR 187-208).

On December 14, 2012, Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 289). On January 17, 2014, the Appeals Council issued an order vacating the ALJ's decision and remanding the case to the ALJ in order to: evaluate the medical source opinion of Plaintiff's treating physician as it relates to

Plaintiff's residual functional capacity ("RFC");[2] consider Plaintiff's subjective complaints; and, if warranted, seek testimony from a VE to determine the effect of Plaintiff's limitations on her "occupational base." (AR 212-14). On June 4, 2014, the ALJ held a second hearing, with testimony from Plaintiff and VE Sandra Fioretti. (AR 108-34). On August 22, 2014, the ALJ denied Plaintiff benefits in a written decision ("the ALJ's Decision"). (AR 21-34).

The ALJ applied the five-step process in evaluating Plaintiff's case. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of November 21, 2009, and that Plaintiff's date last insured was December 31, 2013. (AR 21-23). At step two, the ALJ found that Plaintiff had the following severe impairments: right shoulder impingement syndrome with tendinosis of the rotator cuff with partial tear of the supraspinatus tendon and labral tear; left shoulder impingement syndrome and small rotator cuff tear of the supraspinatus tendon; right knee medial meniscal tear; right heel tendonitis/bursitis and plantar fasciitis; lumbar radiculopathy; cervical radiculopathy; degenerative changes of the right hand; temporomandibular joint disorder; obesity; and post-traumatic anxiety/depression. (AR 23-24).[3] At step three, the ALJ determined

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[3] The ALJ found that Plaintiff's alleged sleep disorder was not a severe impairment. (AR 24).

that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 24).

Before proceeding to step four, the ALJ found that, through the date last insured, Plaintiff had the RFC to perform light work[4] with the following limitations: she is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; occasionally use the right lower extremity for pushing and pulling; never perform overhead reaching, above shoulder work, or use the right lower extremity to operate foot controls; should avoid working around unprotected hazardous machinery or unprotected heights; never climb ladders, ropes, and scaffolds; can understand, remember, and carry out simple job instructions; can maintain attention and concentration to perform simple, routine and repetitive tasks in a work environment free of fast-paced production requirements; have occasional interaction with co-workers, supervisors, and the general public; work in an environment with occasional changes to the work setting and work-related decision making; and never perform work that would require directing others, abstract thought, or planning. (AR 25).

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms not credible. (AR 26-27). After discussing Plaintiff's medical record, the ALJ addressed the opinions of Plaintiff's treating, examining, and nonexamining physicians. (See AR 27-32).

The ALJ rejected opinion evidence from Plaintiff's treating physician, Lorenzo Tizon, M.D., a general practitioner at Samaritan Medical Rehabilitation Center. (AR 28-32). In a January 2013 questionnaire, Dr. Tizon opined that Plaintiff is able to sit, stand, and/or walk less than two hours each in an eight-hour workday; lift and carry up to 10 pounds frequently, 20 pounds occasionally, and never 50 or 100 pounds; use her hands 34-66 percent compared to the general population; bend/stoop, reach up, and reach forward occasionally; and never squat, crawl, climb, crouch, or kneel. Dr. Tizon identified objective signs of Plaintiff's pain as muscle spasms and "abnormal MRI findings." Dr. Tizon stated that Plaintiff will need surgery for tears in both of her shoulders. (AR 890-91). In a February 2014 questionnaire, Dr. Tizon opined that Plaintiff's impairments are likely to produce good days and bad days, and that Plaintiff would be absent from work about once per month because of her symptoms. (AR 893).

The ALJ gave "little weight" to the opinion of Dr. Tizon for three reasons: (1) Dr. Tizon was biased in favor of Plaintiff obtaining disability because he saw Plaintiff in a workers' compensation capacity; (2) the objective medical evidence and Plaintiff's treatment history did not support Dr. Tizon's opinion;

and (3) Dr. Tizon relied on Plaintiff's subjective complaints "and seemed to uncritically accept as true most, if not all, of what the [Plaintiff] reported." (AR 31).

The ALJ also gave "little weight" to the opinions of consultative examiner, Samir Kadada, M.D., and "State agency physical medical consultants," P.M. Balson, M.D. and M.D. Morgan, M.D. (AR 31). On August 24, 2011, Dr. Kadada opined that Plaintiff can lift twenty-five pounds frequently and fifty pounds occasionally; stand and walk six hours out of an eight-hour workday; and had no sitting, postural, or manipulative limitations. (AR 448-53). The ALJ gave little weight to Dr. Kadada's opinion because "he did not have the opportunity to consider the evidence as a whole," and the RFC that the ALJ assigned Plaintiff took "into consideration the evidence added to the record after [Dr. Kadada's] determination," (AR 31). On October 4, 2011, and January 27, 2012, respectively, Dr. Morgan and Dr. Balson found that Plaintiff had no severe medically determinable physical impairments. (AR 152-65, 172-85). The ALJ gave these opinions little weight because "[a]dditional evidence added to the record after this determination . . . establishe[d] the presence of the severe medically determinable physical impairments . . . " (AR 31).

The ALJ, in determining Plaintiff's mental RFC, gave some weight to the opinions of consultative examiner, Divy J. Kikani, M.D., and the State agency medical consultants. The ALJ gave some weight to their opinions because Dr. Kikani personally observed Plaintiff and the State agency consultants were "highly qualified

physicians and psychologists who [were] experts in Social Security Disability programs," (Id.).

The ALJ gave some weight to the opinion of Kimberly M. Spitz Mares, Psy.D.[5] (AR 32). Dr. Mares opined that Plaintiff was mildly impaired in the ability to comprehend and follow instructions; perform simple and repetitive tasks; relate to other people beyond giving and receiving instructions; influence people; make generalizations, evaluations, or decisions without immediate supervision; and accept and carry out responsibility for direction, control, and planning. Dr. Mares opined that Plaintiff was moderately impaired in the ability to maintain a work pace appropriate to the given workload and perform complex or varied tasks. (AR 1026). The ALJ gave Dr. Mares some weight because Dr. Mares "personally observed and examined the claimant, and her findings [were] generally consistent with the treatment records. However, [Dr. Mares] gave the benefit of the doubt to the claimant's subjective complaints in adopting additional mental restrictions." (AR 32).

The ALJ also gave "little weight" to the opinion of Vocational Return to Work Counselor, Boska Dundov. (AR 31). On November 30, 2012, Ms. Dundov opined that Plaintiff can frequently reach, handle, and finger; never stoop, kneel, crouch, crawl, climb, or balance; sit, stand, and walk for up to 30 minutes at a time; and occasionally lift five pounds. (AR 1011-13). The ALJ reasoned that

---

[5] Dr. Mares also examined Plaintiff in a workers' compensation setting. (See 1022-27).

Ms. Dundov's non-medical source opinion "is not entitled to be given the same weight as a qualifying medical source opinion," and that she "provided a one-time assessment and did not provide any specific functional limitations that prevented the [Plaintiff] from working." (AR 31).

At step four, the ALJ determined that Plaintiff was not able to perform her past relevant work as a machine packager because she was limited to a light range of work. (AR 32). At step five, the ALJ found Plaintiff was able to perform jobs consistent with her age, education, and medical limitations existing in significant numbers in the national economy. In particular, the ALJ found that Plaintiff could perform the requirements of the following occupations: bench assembler (Dictionary of Occupational Titles ("DOT") No. 706.684-042), small products assembler (DOT 739.687-030), and plastic hospital products assembler (DOT 712.687-010). (AR 33-34). Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 34).

Plaintiff requested that the Appeals Council review the ALJ's Decision, which was denied on January 29. 2016. (AR 1-3). The ALJ's Decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

\\
\\
\\
\\
\\

**III. STANDARD OF REVIEW**

This court reviews the Commissioner's decision to determine if the decision is free of legal error and supported by substantial evidence. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). As a result, "[i]f the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**IV. PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that, in assessing her RFC, the ALJ failed to give proper weight to the opinions of treating physician, Dr. Tizon, and Vocational Return to Work Counselor, Boska Dundov. (Joint Stip. at 5-13, 19-27).

\\
\\
\\
\\
\\

**V. DISCUSSION**

After reviewing the record, the Court finds that the ALJ did not provide specific and legitimate reasons supported by substantial evidence in the record to reject the opinion of Dr. Tizon, but gave proper, germane reasons to reject the opinion of Vocational Return to Work Counselor, Buska Dundov.

### A. The ALJ Did Not Provide Specific And Legitimate Reasons To Reject Dr. Tizon's Opinion

Plaintiff contends that the ALJ did not provide specific and legitimate reasons to reject the opinion of Dr. Tizon. Plaintiff specifically asserts that the ALJ (1) improperly rejected Dr. Tizon's opinion because Dr. Tizon saw Plaintiff for a workers' compensation claim, and (2) improperly found that Dr. Tizon relied on Plaintiff's subjective complaints to formulate his opinion. (Joint Stip. at 5-13, 19-25).

Dr. Tizon's opinion and the ALJ's ultimate RFC determination primarily differ in their views on the amount of time that Plaintiff is able to sit, stand, and walk during an eight-hour workday. Dr. Tizon opined that Plaintiff can sit, stand, and walk a total of two hours each in an eight-hour workday. (AR 890). However, the ALJ found that Plaintiff could perform a light range of work (AR 25), which would entail "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls," 20 C.F.R. 404.1567(b).

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Magallanes v. Bowen, 812 F.2d 747, 751 (9th Cir. 1989). The weight given to a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(b)-(d). Controlling weight must be given to medical opinions of treating physicians where the opinion is well-supported and not inconsistent with the other substantial evidence in the record. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Social Security Ruling 96-2p. To reject the uncontradicted opinion of a treating physician, the ALJ must give "clear and convincing reasons that are supported by substantial evidence." Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014) (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)); Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002). If the treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the treating physician's opinion. Orn, 495 F.3d at 632; Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

Because Dr. Tizon's opinion was contradicted by the opinions of consultative examiner, Dr. Kadada (see AR 448-53), State agency physicians, Dr. Balson and Dr. Morgan, and State agency medical consultant Dr. Mares (see AR 152-65, 172-85), the ALJ was required to give specific and legitimate reasons supported by substantial

evidence in the record to reject Dr. Tizon's opinion. Hill, 698 F.3d at 1160.

The ALJ's decision to reject Dr. Tizon's opinion because Dr. Tizon treated Plaintiff for workers' compensation purposes (see AR 28) was not a specific and legitimate reason to reject Dr. Tizon's opinion. Batson, 359 F.3d at 1196 (the ALJ erred in rejecting opinion of physician solely because plaintiff was treated by physician for workers' compensation purposes); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) ("[T]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."); Booth v. Barnhart, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002) (an "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a workers' compensation proceeding).

Moreover, the ALJ's finding that Dr. Tizon's opinion rested largely on Plaintiff's subjective complaints (see AR 28) was not supported by substantial evidence. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject treating physician's opinion where it relies on claimant's discredited self-report and objective clinical evidence does not support the opinion). Contrary to the ALJ's findings, Dr. Tizon relied on objective clinical evidence, including MRIs, x-rays, and examination findings from orthopedic surgeon, Edwin Horainian, M.D., and podiatric physician, Schlomo Schmuel, D.P.M., to support his opinion. (See AR 1021, 1046-76).

In his treating notes, Dr. Tizon cited a May 2012 MRI of Plaintiff's right knee showing "meniscal degeneration with an underlying tear" and "[a] suprapatellar joint effusion" and a May 2012 MRI and x-ray of the right heel showing "a small inferior calcaneal heel spur," (AR 824, 826).[6]  (See AR 1021, 1046-49). On February 27, 2012, Dr. Tizon found that Plaintiff had a 65 percent extension/flexion and a 70 percent bending/rotation range of motion in her lumbar spine; "tenderness over the superior joint of the right knee;" pain "at extreme ranges of motion;" and "positive tenderness over the lateral malleolus and plantar fascia" in the right ankle. (AR 865-67). In addition, on May 20, 2013, Dr. Tizon found that Plaintiff was limited to 20-60 degrees range of motion in the lumbar spine; 45-80 degrees range of motion in the thoracic spine; and 120-135 degrees range of motion in the knees. (AR 1067-69).

Dr. Tizon's opinion was also supported by the treating notes of board certified orthopedic surgeon, Edwin Horainian, M.D., who treated Plaintiff from July to August 2012. (See AR 837-50, 883-89). On July 2, 2012, Dr. Horaininan recommended Plaintiff for arthroscopic surgery in both shoulders and the right knee (AR 837-50), relying on MRI results that showed tears in Plaintiff's meniscus and rotator cuffs, and an examination that showed Plaintiff "continues to be significantly symptomatic with catching, locking, and a sensation of instability in the knee causing falls." (AR 848). During an August 2012 follow-up appointment, Dr. Horainian

---

[6] There was no objective medical evidence of Plaintiff's meniscal tear diagnosis until May 2012, well after Plaintiff's November 21, 2009, alleged onset date.

reiterated his recommendation for all three surgeries.[7] (AR 888-89).

Finally, the treating notes of podiatric physician, Schlomo Schmuel, D.P.M., who saw Plaintiff on Jun 29, 2012, also supported Dr. Tizon's opinion. (AR 989-1000). Dr. Schmuel diagnosed Plaintiff for plantar fasciitis and instability in her right ankle, and he observed that Plaintiff had an abnormal gait, "antalgic limp, and "shorten[ed] stance phase." (AR 989, 996). Although Plaintiff reportedly underwent twenty-four sessions of physical therapy for her ankle, Dr. Schmuel noted that Plaintiff's symptoms had not subsided. Plaintiff also "failed injection therapy" and had no "observable signs of functional improvement." (AR 991). An examination of Plaintiff showed 2+ deep tendon reflexes in the knee

\\
\\
\\
\\
\\
\\
\\
\\
\\

---

[7] Plaintiff did not undergo surgery for her knee or shoulders, and the record is unclear as to why. One doctor's note states that the workers' compensation clinic "backed out" of the surgeries, whereas Plaintiff testified that her insurance did not authorize the surgeries. (AR 115, 913).

and Achilles tendon; pain to deep palpation; and an abnormal anterior drawer test,[8] Morton's Test,[9] and Talar (Inversion) Test.[10] (AR 993-94).

Dr. Horainian's and Dr. Schmuel's examination findings, as discussed above, supported Dr. Tizon's opinion that Plaintiff was limited in the amount of sitting, standing, and walking she could do each day. See Lester, 81 F.3d at 832 (a similarity of conclusions between doctors provides a reason to credit the opinions of both doctors). Accordingly, the ALJ's finding that Dr. Tizon's opinion was based on subjective complaints was not a specific and legitimate reason supported by substantial evidence in the record.

**B.  The ALJ Properly Rejected The Opinion Of Vocational Return To Work Counselor Dundov**

Plaintiff contends that the ALJ erred in rejecting the opinion of Vocational Return to Work Counselor, Boska Dundov. (See Joint Stip. at 25-27, 29).

---

[8] An Anterior Drawer Test is an orthopedic examination that tests for anterior cruciate ligament ("ACL") integrity. http://physicaltherapyweb.com/anterior-drawer-test-orthopedic-examination-knee/.

[9] A Morton's Test is an orthopedic exam that tests for metarsal pain in the ankle. http://medical-dictionary.thefreedictionary.com/Morton's+test.

[10] A Talar (Inversion) Test is an orthopedic exam that tests the collateral stability of the ankle joint. http://medical-dictionary.thefreedictionary.com/talar+tilt+test.

Public and private social welfare agency personnel, nurse practitioners, and interns are defined as "other sources," 20 C.F.R. § 404.1513(d), and are therefore entitled to less deference than traditional medical sources, such as doctors and psychiatrists. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). An ALJ need only give germane reasons to discount such opinions. See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).

Here, the ALJ properly found that Ms. Dundov, a vocational counselor, did not qualify as a medically acceptable source (AR 1015). 20 C.F.R. § 404.1513(d). Thus, the ALJ needed to provide only a germane reason to reject Ms. Dundov's opinion. See Carter v. Astrue, 472 F. App'x 550, 552-53 (9th Cir. 2012) (ALJ properly provided a germane reason to reject vocational counselor's opinion).

Although the ALJ incorrectly stated that Ms. Dundov did not assign Plaintiff functional limitations in her assessment (see 1005, 1007, 1011), this was not the sole basis for the ALJ's rejection of Ms. Dundov's opinion. The ALJ also found that Ms. Dundov saw Plaintiff on a limited, "one-time" basis (AR 31). This was a germane reason to reject Ms. Dundov's opinion. See Todd v. Colvin, No. CV 13-154-BLG-SEH, 2014 WL 5341931, at *7 (D. Mont. Oct. 20, 2014) (occupational therapist's limited observations of Plaintiff was a germane reason to reject therapist's opinion); Molter v. Astrue, No. CIVS-09-1113 GGH, 2010 WL 2348738, at *4 (E.D. Cal. June 8, 2010) (chiropractor's one-time observation of Plaintiff did not constitute substantial evidence).

**C.  Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

Here, the Court remands because the ALJ did not articulate specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Tizon's opinion regarding Plaintiff's functional limitations.  The record does not establish that the ALJ would necessarily be required to give more weight in the RFC assessment to Dr. Tizon's opinion and find Plaintiff disabled. Remand is therefore appropriate.

\\
\\
\\
\\
\\
\\

## VI. CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is VACATED, and the matter is REMANDED, without benefits, for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 7, 2017.

```
            _____/s/_____
                      ALKA SAGAR
            UNITED STATES MAGISTRATE JUDGE
```